UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**PAMELA J. BAILEY**,

        Plaintiff,

v.

**DYNCORP INTERNATIONAL FZ-LLC,**
a foreign corporation, and DynCorp
International, LLC.,

        Defendants.

Civil Case No. 3:11-CV-00714-KI

OPINION AND ORDER

    Shari Lynne Lane
    Northwest Employment Law, LLC
    205 SE Spokane St., Suite 305
    Portland, Oregon  97202

        Attorney for Plaintiff

Page 1 - OPINION AND ORDER

Douglas S. Parker
Craig L. Leis
Littler Mendelson, P.C.
121 SW Morrison Street, Suite 900
Portland, Oregon  97204

    Attorneys for Defendants

King, Judge:

Plaintiff Pamela Bailey contracted to work as a member of the Women's Police Corps in Kabul, Afghanistan. Bailey's claims for retaliation and breach of contract arose when she was injured on the job and eventually terminated. Bailey alleges she was jointly employed by both defendants, DynCorp International, FZ-LCC ("DynCorp FZ") and DynCorp International, LLC ("DynCorp International"). DynCorp International denies it ever employed Bailey. Before the court is Defendant DynCorp International's Motion to Dismiss [7]. For the following reasons, I conclude the court does not have personal jurisdiction over DynCorp International and dismiss it from the case.

## LEGAL STANDARDS

The plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1073 (9th Cir. 2011). If the court does not hold an evidentiary hearing, a plaintiff can withstand a motion to dismiss by making a prima facie showing of jurisdictional facts which, if true, support jurisdiction over the defendant. Id. In deciding whether a prima facie case for personal jurisdiction exists, the court takes uncontroverted allegations in the complaint as true and resolves factual conflicts in the plaintiff's favor. Id.

Page 2 - OPINION AND ORDER

**FACTS**

I did not hold an evidentiary hearing in this matter. The following comprises the prima facie showing of jurisdictional facts resolving conflicts in plaintiff's favor:

DynCorp International is a Delaware limited liability corporation with its principal place of business in Falls Church, Virginia. It does not engage in business in Oregon, has no facilities in Oregon, and has no subsidiaries incorporated or headquartered in Oregon. DynCorp FZ is a separate corporate entity from DynCorp International. DynCorp FZ is a Dubai United Arab Emirates Free Zone limited liability company with its principal place of business in Dubai Internet City, U.A.E.

Bailey has lived in Oregon for many years. She saw job opportunities on the DynCorp International website, and her prior police chief met a DynCorp International recruiter at a conference held by the Oregon Association of Chiefs of Police. In February 2008, Bailey applied for a job posted on the DynCorp International website and worked with a DynCorp International recruiter, Michael Morgan, who was working from an office in Texas.[1] All communications were via telephone or email.

On April 7, 2008, Bailey received a contingent job offer as a Police Advisor in Afghanistan. The offer is on letterhead for Worldwide Recruiting & Staffing Services LLC, a DynCorp International Company.

---

[1] DynCorp International provides evidence in a declaration from its Assistant Corporate Secretary that Bailey was recruited by Worldwide Recruiting and Staffing Services LLC ("WRSS") on behalf of its client, DynCorp FZ. WRSS is a subsidiary of DynCorp International but the two are separate corporate entities. DynCorp International has no record of employing a person named Michael Morgan as a recruiter. For purposes of a prima facie showing, however, I must resolve this factual conflict in favor of Bailey.

DynCorp International flew Bailey to a training site in Virginia which was operated by a DynCorp International subcontractor. Bailey failed a physical agility test, so she returned to Oregon to work on her strength and agility. She went back to Virginia in October 2008, passed all tests, and participated in training overseen by Michael Mack, who Bailey thinks is a DynCorp International employee.

At the end of the training, Bailey executed a Foreign Service Employment Agreement while still in Virginia. She went to Afghanistan a few days later, where she executed a second copy of the agreement on October 22, 2008. The Agreement states it is between Bailey and DynCorp FZ, defined as the Employer. The job is described as:

> Employee will provide personnel Services to DynCorp International in accordance with the Employee Leasing Agreement between the Employer and DynCorp International LLC (the "Customer["]). The Employee will also be responsible for performing additional duties as directed by the Employee's supervisor or the Employer's Customer.

Bailey Decl. Ex. A, at 1.

The Agreement also states: (1) the geographic location of employment is Afghanistan; (2) the Employer will be performing duties for the Customer, DynCorp International, under its contract with the State Department CIVPOL program; (3) the Customer, DynCorp International, is authorized to change the work schedule, provide training, specify policies and regulations which must be followed, provide equipment and gear, and discontinue work in Afghanistan which would result in the Agreement being terminated without cause. The Employer may terminate Bailey for cause if the "Customer [DynCorp International] requests removal of Employee from the assigned program[.]" Id. at Ex. A, at 6.

All employees with whom Bailey communicated via email used an address at the domain name "dyn-intl.com." She is not aware of any separate DynCorp FZ email address.

Bailey injured her shoulder in Afghanistan in September 2009. She alleges that her supervisors harassed her after the injury. On December 29, 2009, DynCorp International's office in Forth Worth, Texas filed an Employers First Report of Injury or Occupational Illness with the Department of Labor concerning Bailey's injury.

On June 15, 2010, Mamie Ekren, Reports Officer, DynCorp International, Camp Gibson in Kabul, Afghanistan sent an email to dozens of DynCorp International and State Department recipients to report a drug investigation involving Bailey.

Bailey returned to Oregon on June 22, 2010 for a pre-approved leave. The next day, she received an email sent by a DynCorp International human resources representative with a termination letter attached. The letter stated Bailey was terminated for cause for violating the company's drug use policies, at the request of "our Customer." Compl. ¶ 27. The letter is not in the record but, based on this language, it was presumably signed by a representative of DynCorp FZ.

After Bailey's termination, she was directed to send money to a DynCorp International employee in Texas to pay for shipping her personal belongings back to Oregon.

## DISCUSSION

I.   Motion to Supplement the Record

Bailey seeks leave to file two documents: (1) an April 7, 2008 letter offering Bailey employment; and (2) a December 29, 2009 Employers First Report of Injury or Occupational Illness filed with the Department of Labor. Bailey's counsel filed her response to DynCorp International's motion to dismiss on November 7, 2011. Counsel received the offer letter on November 3, 2011 in

Page 5 - OPINION AND ORDER

a production from defendants containing over 300 documents. Counsel received the Report of Injury in a production from the Office of Workers Compensation on November 18. Counsel discovered both documents when reviewing discovery on November 21.

DynCorp International objects to admission of the two documents, primarily because it contends the documents are not relevant to some of the issues before the court. I admit the documents to the record concerning the personal jurisdiction issue. Summaries of the documents are included in the Facts section above.

II.     Personal Jurisdiction

DynCorp International moves to be dismissed from the case based on its contention that this court lacks personal jurisdiction over it.

If no applicable federal statute governing personal jurisdiction exists, the court applies the law of the state in which the court sits. CollegeSource, 653 F.3d at 1073. Oregon extends jurisdiction to the outer limits permitted by the state or federal constitutions. ORCP 4L. Thus, I can turn to a federal due process analysis.

Federal due process requires a nonresident defendant to have minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend "'traditional notions of fair play and substantial justice.'" CollegeSource, 653 F.3d at 1073-74 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The constitutional due process test may be satisfied by a finding of either general or specific jurisdiction.

A.     General Jurisdiction

When a defendant has "substantial" or "continuous and systematic" contacts with the forum state, general jurisdiction is proper even if the cause of action is unrelated to the defendant's forum

activities. Id. at 1074. The standard is "exacting" and requires contacts that "approximate physical presence." Id.

DynCorp International is a Delaware limited liability corporation with its principal place of business in Virginia. DynCorp International has no facilities or operations in Oregon. Bailey concedes that, at this time, she lacks sufficient information to demonstrate that DynCorp International has continuous and systematic contacts with Oregon sufficient for the court to make a finding of general jurisdiction.

    B.    Specific Jurisdiction

When general jurisdiction is inappropriate, the Ninth Circuit recognizes the application of a three-part test to determine whether specific jurisdiction exists:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

Id. at 1076 (internal quotation omitted).

The plaintiff has the burden of satisfying the first two prongs of the test or personal jurisdiction is not established in the forum state. If the plaintiff is successful, the burden shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would not be reasonable. Id.

The parties dispute whether the court may exercise specific jurisdiction over DynCorp International.

1.      Purposeful Availment/Purposeful Direction

The first element ensures that a "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559 (1980).

> A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort.
>
> A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there. By taking such actions, a defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. In return for these benefits and protections, a defendant must–as a quid pro quo–submit to the burdens of litigation in that forum.
>
> A showing that a defendant purposefully directed his conduct toward a forum state, by contrast, usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802-03 (9th Cir. 2004) (internal quotation and citation omitted).

I first concentrate on the employment retaliation claims which, as torts, are analyzed for purposeful direction under the effects tests. Ziegler v. Indian River Cnty., 64 F.3d 470, 474 (9th Cir. 1995) (citing an Age Discrimination in Employment case in support of decision to use effects test for a tort claim concerning the deprivation of constitutional rights).

Purposeful direction is evaluated under the three-part effects test arising from Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482 (1984). To meet the effects test, the defendant must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm

that the defendant knew was likely to be suffered in the forum state. CollegeSource, 653 F.3d at 1077.

Under the effects test, it is insufficient that the intentional act caused harm in the forum state; the act must also have been expressly aimed at the forum state. Schwarzenegger, 374 F.3d at 807 (element of purposeful direction at California, the forum state and where Schwarzenegger lived, not met when car dealer published an advertisement using the likeness of Schwarzenegger in an Ohio newspaper to attract local customers); see also Yahoo! v. La Ligue Contre le Racisme, 433 F.3d 1199, 1208-10 (9th Cir. 2006) (French organizations expressly aimed conduct at California sufficient to support specific jurisdiction when they obtained orders from a French court requiring Yahoo!, which is headquartered in California, to remove references to Nazism from the French version of its website, fr.yahoo.com; the orders required Yahoo! to make changes to its Internet servers located in California and any financial impact would be felt in California); Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1087-88 (9th Cir. 2000) (Georgia defendant was found to have purposefully directed activities at California when it sent a letter to the registrar of Internet domain names, located in Virginia, challenging the domain name of a California company and triggering the dispute resolution policy); Gordy v. Daily News, L.P., 95 F.3d 829, 833 (9th Cir. 1996) (New York newspaper and its columnist were brought into California court where the defamed plaintiff lived and the newspaper had a small but steady circulation); Metro. Life Ins. Co. v. Neaves, 912 F.2d 1062 (9th Cir. 1990) (Alabama resident was brought into a California court on the basis of a letter she sent to an insurance company in California stating she was entitled to an insurance payment actually belonging to a California resident).

I stress that I am analyzing whether this court can exercise personal jurisdiction over DynCorp International, and not whether DynCorp International is a joint employer with DynCorp FZ. Moreover, my analysis is based on the contacts of DynCorp International and not DynCorp FZ. If related companies are separate and distinct corporate entities, the presence of one in a forum state cannot be attributed to the other. Holland Am. Line v. Wartsila N. Am., 485 F.3d 450, 459 (9th Cir. 2007) (applying rule to parent and subsidiary).

DynCorp International contends it had no regular contact with Oregon and did not direct its activities at Oregon residents. According to DynCorp International, Bailey worked in Afghanistan and any unlawful employment acts, including her termination, took place outside Oregon. DynCorp International argues that Bailey's unilateral acts, such as choosing her residence or vacation locations, are insufficient to establish specific jurisdiction in Oregon. Further, the company contends Bailey could have accessed the email containing her termination from any location in the word. DynCorp International argues that the relevant harm analyzed in the third prong of the effects test is the loss of Bailey's job in Afghanistan and not the economic and emotional effects Bailey claims to have suffered thereafter in Oregon.

Bailey contends DynCorp International committed an intentional act when it instructed DynCorp FZ to terminate her. Bailey claims DynCorp International expressly aimed its unlawful conduct at Oregon, and knew the harm was likely to be suffered in Oregon, because the company knew Bailey was an Oregon resident when it ordered her termination.

Bailey's retaliation and breach of contract claims arise from her termination. I agree with DynCorp International that her injury occurred in Afghanistan, where she was no longer employed, and not at her permanent residence in Oregon, where she suffered economic consequences. See Jobe

Page 10 - OPINION AND ORDER

v. ATR Mktg, Inc., 87 F.3d 751, 753-54 (5th Cir. 1996) (for jurisdictional purposes, the court must distinguish the actual injury from its resulting consequences such as pain and suffering or economic effects; consequences resulting from the actual tort injury do not confer personal jurisdiction at the sites where such consequences happen to occur). It is unclear where the termination decision was made but there is no evidence that it was made in Oregon. Further, Bailey was trained in Virginia, executed her employment contract in Virginia and again in Afghanistan, DynCorp International did not aim its recruiting website at Oregon, and the recruiter working with Bailey was in Texas. The DynCorp International recruiter's appearance at a job fair in Oregon is an extremely limited contact, and there is no evidence that Bailey's recruitment was a result of that appearance. The fact that Bailey received her job offer and termination letter via email, which Bailey accessed when in Oregon, is fortuitous and due to unilateral activity on Bailey's part.

      Bailey relies on the following cases: Potts v. Cameron Offshore Boats, Inc., 401 F. Supp. 2d 733 (S.D. Tex. 2005) (when an employee was injured while at sea, a Texas court exercised specific jurisdiction over a Louisiana company which used a Texas recruiting company to hire the plaintiff and 30 other workers in three years); Bixby v. KBR, Inc., No. CV 09-632-PK, 2010 WL 1499455 (D. Or. Apr. 12, 2010) (Oregon court exercised specific jurisdiction over out-of-state defendant corporations which lied about the extent of water contamination to Oregon National Guardsmen assigned to protect an Iraqi water plant controlled by defendants); Thompson v. StreetSmarts, Inc., No. CV-10-1885-PHX-LOA, 2011 WL 2600744 (D. Ariz. June 30, 2011) (Arizona court exercised specific jurisdiction over an out-of-state corporation in an employment contract dispute; plaintiff performed all work from his home in Arizona).

Potts is distinguishable from Bailey's situation because the employer in Potts used a recruiting company in the forum jurisdiction to hire dozens of workers. Thompson is distinguishable because the employee worked from home in the forum jurisdiction.

Bixby best supports Bailey's argument with its reasoning:

> [E]ach defendant, with knowledge that plaintiffs were Oregon National Guardsmen from Oregon, intentionally misrepresented conditions at the Qarmat Ali site to the plaintiffs and intentionally withheld from them the information that the site was contaminated with hexavalent chromium. Such affirmative, calculated misrepresentation clearly constitutes an intentional act, satisfying the first prong of the so-called "effects" test for determining whether purposeful direction has taken place.

Bixby, 2010 WL 1499455, at *8. I am unconvinced, however, that Bixby correctly distinguished the actual injury from the resulting consequences.

Instead, I agree with the analysis in two cases cited by DynCorp International. In Cate v. Public Service Enterprise Group, Inc., No. 06-cv-200-SM, 2007 WL 2437946 (D.N.H. Aug. 23, 2007), the New Hampshire court did not exercise specific jurisdiction over a Maryland company that fired Cate from a New York job site. Id. at *1. The court was unpersuaded that the company phone calls to Cate in New Hampshire during his recruitment, the company's reimbursement of Cate for his weekly commuting expenses from New Hampshire, and the fact that Cate felt the effects of his termination in New Hampshire, were adequate to support specific jurisdiction in New Hampshire over the termination claim. Id. at *4.

Similarly, the California district court in Sarkis v. Lajcak, No. C-08-01911 RMW, 2009 WL 3367069 (N.D. Cal. Oct. 15, 2009), aff'd, 425 F.App'x 557 (9th Cir.), cert. denied, 132 S. Ct. 413 (2011), refused to exercise specific jurisdiction in an employment dispute in which the prospective employee answered an ad in a global magazine for a job in Bosnia, applied for the job from

Page 12 - OPINION AND ORDER

California using California contact information, interviewed by phone from California, received an emailed job offer while in California, executed the job offer in California and faxed it back to Bosnia, and received much of his pay at his bank in California. The employee performed the job in Bosnia and was terminated while there. Id. at *1-2. The court held the Bosnian entity neither purposefully availed itself of conducting activities in California nor purposefully directed its activities there. Id. at *3-4.

Here, Bailey responded from Oregon to an ad on DynCorp International's website and was recruited by a DynCorp International recruiter working from Texas. No DynCorp International employee came to Oregon to recruit Bailey. DynCorp International trained Bailey in Virginia. Bailey's employment agreement is with DynCorp FZ, not DynCorp International. After training, Bailey performed her job entirely in Afghanistan. DynCorp International's Texas office filed the report with the Department of Labor reporting Bailey's injury. DynCorp International forwarded an email from DynCorp FZ which contained Bailey's termination letter. Although Bailey was vacationing in Oregon when she opened the email and learned of her termination, she could have been anywhere in the world at the time.

The most important facts are that Bailey performed the job in Afghanistan. Her claims all concern her termination. Thus, Bailey felt the injury in Afghanistan where she could no longer work. The fact that she feels the emotional and financial impact from the termination in Oregon does not mean that DynCorp International expressly aimed the termination at Oregon. Bailey's situation is very similar to that in Cate and Sarkis. All three employees performed the job outside the forum state. I find that Bailey has not met the effects test because she failed to demonstrate that DynCorp International purposefully directed its conduct at Oregon.

Bailey also alleges breach of contract claims for failing to pay her completion bonus, leave pay, and transportation costs after falsely characterizing her termination as for cause. DynCorp International did not expressly aim sufficient recruiting activities, or other contacts, at Oregon to purposefully avail itself of the privilege of conducting activities within Oregon.

In sum, Bailey has failed to satisfy the first prong of the test for specific jurisdiction.

### 2.  Arising out of Forum-Related Activities

The Ninth Circuit uses a "but for" test to determine whether a particular claim arises out of forum-related activities, thus satisfying the second prong of the three-part test. Menken v. Emm, 503 F.3d 1050, 1058 (9th Cir. 2007) (plaintiff would not have suffered an injury "but for" defendant's forum-related conduct).

Bailey contends her claims arise out of DynCorp International's activities in Oregon because she was home in Oregon on pre-approved leave when she learned of the termination.

DynCorp International contends it is not Bailey's employer, it did not terminate her, and there is no evidence that the termination decision was made by anybody in Oregon. Further, the company argues that this prong of the specific jurisdiction test focuses exclusively on the defendant's forum-related activities that directly give rise to the plaintiff's claim. Thus, DynCorp International contends the email it sent to Bailey to inform her of the termination is not substantial enough to fulfill this prong of the specific jurisdiction test because the email was not directed at Oregon and Bailey could have accessed it anywhere in the world.

I must agree with DynCorp International. Its only contacts with Oregon are a few phone calls and emails made to Bailey to recruit her when she lived in Oregon. Bailey's claims arise from her

termination, not her recruitment. Accordingly, Bailey also fails to satisfy the second prong of the test for specific jurisdiction.

        3.    Reasonableness

If the plaintiff is successful is establishing the first two prongs of the test for exercising specific jurisdiction, the burden shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would not be reasonable. CollegeSource, 653 F.3d at 1074.

Because Bailey did not meet her burden of establishing the first two prongs of the test for exercising specific jurisdiction, I decline to analyze whether DynCorp International has presented a compelling case that jurisdiction in Oregon is not reasonable.

    C.    Summary

Bailey has not met her burden of establishing that the court can exercise personal jurisdiction over DynCorp International. I dismiss the company from the action.

## CONCLUSION

Plaintiff's Motion for Leave to Supplement the Record [14] is granted. Defendant DynCorp International's Motion to Dismiss [7] is granted and I dismiss it from the action.

IT IS SO ORDERED.

DATED this   11th   day of January, 2011.


                        /s/ Garr M. King
                        Garr M. King
                        United States District Judge